**SMITH & WESSON CORP., et al., Appellants–Defendants,**

**and**

**United States of America, Appellant–Intervenor,**

**v.**

**CITY OF GARY, Indiana, by its Mayor, Rudy Clay, Appellee–Plaintiff.**

No. 45A05–0612–CV–754.

Court of Appeals of Indiana.

Oct. 29, 2007.

---

Robert F. Parker, Burke Costanza & Cuppy, Merrillville, IN, Thomas E. Fennell, Michael L. Rice, Jones Day, Dallas, TX, Attorneys for Colt's Manufacturing Company, LLC.

Terence M. Austgen, Elizabeth M. Bezak, Singleton Crist Austgen & Sears, Munster, IN, James P. Dorr, James B. Vogts, Sarah L. Olson, Aimee B. Anderson, Wildman Harrold Allen & Dixon, Chicago, IL, Attorneys for Sturm, Ruger & Company, Inc.

David W. Pera, Buoscio Pera & Kramer, Merrillville, IN, Jeffrey S. Nelson, Shook

Hardy & Bacon, Kansas City, MO, Attorneys for Smith & Wesson Corp.

John W. Mead, Mead Mead & Clark, Salem, IN, Michael C. Hewitt, Bruinsma & Hewitt, Costa Mesa, CA, Attorneys for B.L. Jennings, Inc. and Bryco Arms Corporation.

David C. Jensen, John M. McCrum, Eichhorn & Eichhorn, Hammond, IN, Lawrence S. Greenwald, Larry Fletcher-Hill, Catherine A. Bledsoe, Gordon Feinblatt Rothman Hoffberger & Hollander, Baltimore, MD, Attorneys for Beretta U.S.A. Corp.

Richard A. Mayer, Spangler Jennings & Dougherty, Merrillville, IN, William M. Griffin, III, Jonann E. Chiles, Karen S. Halbert, Friday Eldredge & Clark, Little Rock, AR, Attorneys for BrowningArms Company.

Richard A. Mayer, Ketaki Sircar, Spangler Jennings & Dougherty, Merrillville, IN, John F. Renzulli, Scott C. Allan, Renzulli Law Firm, New York, NY, Attorneys for Glock, Inc. and Beemiller, Inc. d/b/a Hi–Point firearms i/s/h/a Hi–Point Firearms Corp.

John W. Mead, Mead Mead & Clark, Salem, IN, Michael I. Branisa, Michael J. Zomcik, Branisa & Zomcik, Houston, TX, Attorneys for Phoenix Arms.

Renee J. Mortimer, Hinshaw & Culbertson, Schererville, IN, Timothy A. Bumann, Budd Larner, Atlanta, GA, Attorneys for Taurus International Manufacturing, Inc.

Joseph S. Reid, Hammond, IN, Peter D. Keisler, Mark B. Stern, Michael S. Raab, Isaac J. Lidsky, Washington, D.C., Attorneys for Intervenor–Appellant United States of America.

Lukas I. Cohen, W. Anthony Walker, Gary, IN, Dennis A. Henigan, Brian J. Siebel, Washington, D.C., Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Smith & Wesson, et al. ("Manufacturers"),[1] bring this interlocutory appeal from the trial court's denial of their motion to dismiss or, in the alternative, motion for judgment on the pleadings in the action brought by the City of Gary, Indiana ("City"). The Manufacturers raise two issues, which we restate as:

I. Whether the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901–7903, bars the City's nuisance claims; and

II. Whether the PLCAA violates the Due Process Clause, separation of powers principles, and the Tenth Amendment.

Because we conclude that the PLCAA does not bar the City's claims, we need not address the constitutional issues. We affirm.[2]

The relevant facts as stated by the Indiana Supreme Court in the first appeal in this case follow:

In September 1999, the City filed this action in state court against a number of participants at various stages in the manufacture and distribution of handguns. After an amended complaint dis-

---

1. Manufacturers include "Sturm, Ruger & Company, Inc.; Colt's Manufacturing Company, LLC; Beretta U.S.A. Corp.; Smith & Wesson Corp.; Browning Arms Company; B.L. Jennings, Inc. and Bryco Arms Corporation; Glock, Inc. and Beemiller, Inc., d/b/a Hi–Point Firearms i/s/h/a Hi–Point Firearms Corp.[;] Phoenix Arms; and Taurus International Manufacturing, Inc." Notice of Appeal at 1.

2. We heard oral argument, which is available on webcast, on October 1, 2007. *See* http://www.indianacourts.org/apps/webcasts.

posed of some defendants, the remaining named defendants are eleven manufacturers, one wholesaler, and five retailers. The City has also named multiple John Doe defendants in all three categories.

The complaint alleges that manufacturers of handguns typically sell to "distributors" who resell at wholesale to "dealers" who in turn sell at retail to the general public. Some categories of persons are prohibited by law from purchasing guns, and all dealer-defendants are alleged to have knowingly sold to illegal buyers through intermediaries in "straw purchases". Specifically, three dealers, Cash America, Ameri–Pawn, and Blythe's Sporting Goods, are alleged to have engaged in straw purchases that were the subject of a "sting" operation conducted by the Gary police department against suspected violators of the gun distribution laws. The police employed a variety of techniques in these operations. In general, an undercover officer first told a dealer's salesperson that he could not lawfully purchase a gun, for example, because he had no license or had been convicted of a felony, and a second undercover officer then made a purchase with the clerk's knowledge that the gun would be given to the first. Some other practices of dealers are also alleged to generate illegal purchases. These include failure by some dealers to obtain the required information for background checks required by federal law, sales of a number of guns to the same person, and intentional "diversion" of guns by some dealers to illegal purchasers.

The City alleges that the manufacturers know of these illegal retail sales of handguns, and know that a small percentage of dealers, including the dealer-defendants here, account for a large portion of illegally obtained handguns. The City alleges the manufacturers and dis-

tributors have the ability to change the distribution system to prevent these unlawful sales but have intentionally failed to do so.

The City alleges that these and other practices generate substantial additional cost to the public in general and the City in particular. Possession of unlawfully purchased guns is claimed to contribute to crime that requires expenditure of public resources in addition to the obvious harm to the victims. The complaint alleges that seventy murders with handguns took place in Gary in 1997, and another fifty-four in 1998. From 1997 through 2000, 2,136 handguns used in crimes were recovered. Of these, 764 were sold through dealers who are defendants in this suit. The City also asserts that harm is suffered by the City at the time of the sale of an illegal handgun because these unlawful sales generate additional requirements to investigate and prosecute the violations of law.

In addition to challenging the distribution practice of the defendants, the City also alleges negligent design of the handguns by the manufacturers that contributes to these injuries. Finally, the City alleges that the manufacturers engage in deceptive advertising of their product by asserting that a gun in the home offers additional safety for the occupants when in fact the contrary is the case.

Count I of the complaint alleges that these facts support a claim for public nuisance. Count II asserts a claim for negligence in distribution of guns and Count III presents a claim for their negligent design. All Counts request compensatory and punitive damages and injunctive relief. The trial court granted a motion by all defendants to dismiss both counts for failure to state a claim.

The City appealed and the Court of Appeals affirmed the dismissal of the negligence count as to all defendants. Dismissal of the claim for public nuisance was affirmed as to the manufacturers and distributors, but the Court of Appeals concluded that the complaint stated a claim for public nuisance as to the dealers to the extent it alleged that they engaged in "straw purchases." *City of Gary v. Smith & Wesson Corp.,* 776 N.E.2d 368, 389 (Ind.Ct.App.2002). *City of Gary ex rel. King v. Smith & Wesson Corp.,* 801 N.E.2d 1222, 1227–1229 (Ind.2003).

The Indiana Supreme Court granted transfer. *Id.* The court addressed the City's public nuisance claim and the City's allegations that the Manufacturers knowingly participated in a distribution system that unnecessarily and sometimes even intentionally provided guns to criminals, juveniles, and others who may not lawfully purchase them. *Id.* at 1231. The court held that unlawful conduct was not a requirement of a public nuisance claim and that "generally, gun regulatory laws leave room for the defendants to be in compliance with those regulations while still acting unreasonably and creating a public nuisance." *Id.* at 1232–1233, 1235. The court referred to "Indiana Code sections 35–47–2.5–1 through 15, dealing with the sale of handguns" and held that "[s]ome of the activity alleged in the complaint presumably violates those regulatory statutes, either directly in the case of the dealers or as knowing accomplices in the case of the other defendants." *Id.* at 1234–1235. The court concluded its analysis of the City's public nuisance claim as follows:

> In sum, the City alleges that all defendants intentionally and willingly supply the demand for illegal purchase of handguns. The City alleges that the dealer-defendants have participated in straw purchases and other unlawful retail transactions, and that manufacturers and distributors have intentionally ignored these unlawful transactions. The result is a large number of handguns in the hands of persons who present a substantial danger to public safety in the City of Gary. I.C. §§ 35–47–2.5–14, –15. Taken as true, these allegations are sufficient to allege an unreasonable chain of distribution of handguns sufficient to give rise to a public nuisance generated by all defendants.

*Id.* at 1241. As a result, the court reversed the dismissal of the City's count of public nuisance against the Manufacturers. *Id.* at 1249. The court also held that the City could proceed on its negligence and negligent design claims. *Id.*

In 2005, the United States Congress passed the PLCAA, and it was signed into law. *See* 15 U.S.C. §§ 7901–7903. The findings and purposes of the PLCAA follow:

(a) Findings

Congress finds the following:

(1) The Second Amendment to the United States Constitution provides that the right of the people to keep and bear arms shall not be infringed.

(2) The Second Amendment to the United States Constitution protects the rights of individuals, including those who are not members of a militia or engaged in military service or training, to keep and bear arms.

(3) Lawsuits have been commenced against manufacturers, distributors, dealers, and importers of firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.

(4) The manufacture, importation, possession, sale, and use of firearms and

ammunition in the United States are heavily regulated by Federal, State, and local laws. Such Federal laws include the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act.

(5) Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

(6) The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

(7) The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law. The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States. Such an expansion of liability would constitute a deprivation of the rights, privileges, and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution.

(8) The liability actions commenced or contemplated by the Federal Government, States, municipalities, private interest groups and others attempt to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees thereby threatening the Separation of Powers doctrine and weakening and undermining important principles of federalism, State sovereignty and comity between the sister States.

(b) Purposes

The purposes of this chapter are as follows:

(1) To prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.

(2) To preserve a citizen's access to a supply of firearms and ammunition for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting.

(3) To guarantee a citizen's rights, privileges, and immunities, as applied to the States, under the Fourteenth

Amendment to the United States Constitution, pursuant to section 5 of that Amendment.

(4) To prevent the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce.

(5) To protect the right, under the First Amendment to the Constitution, of manufacturers, distributors, dealers, and importers of firearms or ammunition products, and trade associations, to speak freely, to assemble peaceably, and to petition the Government for a redress of their grievances.

(6) To preserve and protect the Separation of Powers doctrine and important principles of federalism, State sovereignty and comity between sister States.

(7) To exercise congressional power under article IV, section 1 (the Full Faith and Credit Clause) of the United States Constitution.

15 U.S.C. § 7901.

The PLCAA provided that a "qualified civil liability action may not be brought in any Federal or State court" and a "qualified civil liability action that is pending on October 26, 2005, shall be immediately dismissed by the court in which the action was brought or is currently pending." 15 U.S.C. § 7902. A "qualified civil liability action" was defined as:

a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product,[3] or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party, but shall not include—

\*　　\*　　\*　　\*　　\*　　\*

(iii) an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including—

(I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18;

\*　　\*　　\*　　\*　　\*　　\*

15 U.S.C. § 7903(5).

Shortly after the enactment of the PLCAA, the Manufacturers moved to dismiss the City's complaint or in the alter-

---

**3.** A "qualified product" is defined as "a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18), including any antique firearm (as defined in section 921(a)(16) of such title), or ammunition (as defined in section 921(a)(17)(A) of such title), or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).

native for judgment on the pleadings.[4] The trial court held a hearing on the Manufacturers' motion to dismiss.[5] The United States of America intervened for the limited purpose of defending the constitutionality of the PLCAA and filed a memorandum. The trial court denied the Manufacturers' motion to dismiss and motion for judgment on the pleadings because it found the PLCAA to be unconstitutional. The trial court did not specifically address the applicability of the PLCAA but implied that the PLCAA was applicable to the City's claims.

The dispositive issue is whether the PLCAA bars the City's public nuisance claim. As the Indiana Supreme Court held in the prior appeal of this case:

Indiana nuisance law is grounded in a statute enacted in 1881, and now appearing at Indiana Code section 32–30–6–6. It reads:

Whatever is:

(1) injurious to health;

(2) indecent;

(3) offensive to the senses; or

(4) an obstruction to the free use of property;

so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.

*City of Gary*, 801 N.E.2d at 1229.

 When the grant or denial of a motion to dismiss turns only on the legal sufficiency of the claims, a determination of fact is not required. *Stulajter v. Harrah's Ind. Corp.*, 808 N.E.2d 746, 748 (Ind. Ct.App.2004). Where the trial court's judgment depends on the interpretation of a statute, the review of that judgment is a matter of law. *Id.* The judgment here turns on the interpretation of a statute. Therefore, we apply a *de novo* standard to review the Manufacturers' appeal from the trial court's denial of their motion to dismiss. *Id.*

The City argues that the exception in 15 U.S.C. § 7903(5)(A)(iii) of the PLCAA applies to its public nuisance claim. This exception provides that a qualified civil liability action shall not include:

an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including—

(I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18[.]

This exception has been referred to as the "predicate exception" because its operation

---

4. The record does not contain a copy of the Manufacturers' motion to dismiss or memorandum of law in support thereof.

5. The record does not contain a copy of the transcript from this hearing.

requires an underlying or predicate statutory violation. *See City of New York v. Beretta U.S.A. Corp.*, 401 F.Supp.2d 244, 260–261 (E.D.N.Y.2005) (referring to 15 U.S.C. § 7903(5)(A)(iii) as the predicate exception).

The City argues that Indiana's public nuisance statute has been applied to the sale or marketing of firearms because the Indiana Supreme Court applied the public nuisance statute to the sales practices of the Manufacturers in this case. The Manufacturers argue that "applicable" should be construed narrowly and that the Indiana nuisance statute is not a statute "applicable to the sale or marketing of the product."[6] Thus, this case turns on the interpretation of the word "applicable" in the predicate exception.

Because this case involves the interpretation of a federal law, we will review the United States Supreme Court's statutory interpretation law. The Court has held that "[t]he preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183, 124 S.Ct. 1587, 1593, 158 L.Ed.2d 338 (2004) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992)). When the statutory language is plain, the sole function of the courts, at least where the disposition required by the text is not absurd, is to enforce it according to its terms. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, —— U.S. ——, ——, 126 S.Ct. 2455, 2459, 165 L.Ed.2d 526 (2006). The first step in interpreting a statute is to determine whether the language has a plain and unambiguous meaning with regard to the particular dispute in the case. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.Ct. at 846. In the absence of a definition of a word in a statute, we construe a statutory term in accordance with its ordinary or natural meaning. *F.D.I.C. v. Meyer*, 510 U.S. 471, 476, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994).

Based on the Supreme Court's statutory interpretation canons, we first determine the particular dispute at issue in this case. We then determine whether the statute is ambiguous with regard to the particular dispute. An examination of the City's complaint and the Indiana Supreme Court's opinion indicates that the City alleged violations of Indiana statutes that are specifically applicable to the sale or marketing of firearms. The City's com-

---

**6.** The Manufacturers also argue that the predicate exception is not applicable because it requires that a manufacturer "knowingly violated" a State or Federal statute applicable to the sale or marketing of the product and this requirement is "wholly inconsistent with public nuisance and negligence claims premised on the movement of unspecified firearms into the hands of criminals who misuse them after they are lawfully sold by these defendants." Manufacturers' Brief at 32. However, the Indiana Supreme Court held that the City alleged that "all dealer-defendants are alleged to have *knowingly* sold to illegal buyers through intermediaries in 'straw purchases,'" that "the manufacturers *know* of these illegal retail sales of handguns, and *know* that a small percentage of dealers, including the dealer-defendants here, account for a large portion of illegally obtained handguns," and "manufacturers, distributors, and dealers *knowingly* participate in a distribution system that unnecessarily and sometimes even *intentionally* provides guns to criminals, juveniles, and others who may not lawfully purchase them." 801 N.E.2d at 1228, 1231 (emphasis added).

plaint included the allegation that the "Defendants' conduct violates and undermines the laws, regulations, and public policies of the State of Indiana and the federal government, which *inter alia,* restrict who may purchase, own, or carry handguns and other firearms, and require specific permitting procedures limiting access to deadly weapons." Appellant's Appendix at 60. The Indiana Supreme Court referred to "Indiana Code sections 35–47–2.5–1 through 15, dealing with the sale of handguns" and held that "[s]ome of the activity alleged in the complaint presumably violates those regulatory statutes, either directly in the case of the dealers or as knowing accomplices in the case of the other defendants." *City of Gary,* 801 N.E.2d at 1234–1235. In summarizing the analysis of the City's public nuisance claim, the court held:

> In sum, the City alleges that all defendants intentionally and willingly supply the demand for *illegal* purchase of handguns. The City alleges that the dealer-defendants have participated in straw purchases and other *unlawful* retail transactions, and that manufacturers and distributors have intentionally ignored these *unlawful* transactions. The result is a large number of handguns in the hands of persons who present a substantial danger to public safety in the City of Gary. I.C. §§ 35–47–2.5–14, –15. Taken as true, these allegations are sufficient to allege an unreasonable chain of distribution of handguns sufficient to give rise to a public nuisance generated by all defendants.

*Id.* at 1241 (emphasis added). Accordingly, the issue is whether Indiana's public nuisance statute, as applied by the Indiana Supreme Court to the alleged conduct of the Manufacturers, is a statute applicable to the sale or marketing of firearms for purposes of the PLCAA. With the particular dispute in mind, we address whether the predicate exception is ambiguous by examining the language of the predicate exception, the context of the predicate exception, and the broader context of the predicate exception within the PLCAA.

■ We begin by examining the language of the predicate exception itself. The predicate exception provides that a qualified civil liability action shall not include "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product...." 15 U.S.C. § 7903(5)(A)(iii). The word "applicable" is not defined by the statute but is generally defined as "[c]apable of being applied." American Heritage Dictionary of the English Language 63 (1981). We cannot say that the word "applicable" in the predicate exception is ambiguous. On the face of the language, Indiana's public nuisance statute appears applicable to the sale or marketing of firearms. *See City of New York,* 401 F.Supp.2d at 261–264 (addressing the PLCAA and holding that the word "applicable" means "capable of being applied").

The Manufacturers argue that "[r]eading the phrase 'statute applicable to the sale or marketing of the [firearm]' in the context of the remaining language of the predicate exception, it is clear that the phrase is limited to statutes regulating the manner in which a firearm is sold or marketed—*i.e.,* statutes specifying when, where, how, and to whom a firearm may be sold or marketed." Manufacturers' Brief at 30. The Manufacturers argue that Indiana's public nuisance statute bears "no resemblance to the firearm-specific regulatory statutes set forth in subsections (I) and (II) of § 7903(A)(5)(iii)" because they say nothing about firearms or sales or marketing. *Id.* at 32. The predicate exception provides that a qualified civil liability action shall not include:

an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including—

(I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18[.]

15 U.S.C. § 7903(5)(A)(iii).

The City argues that "[b]oth subparts [in the predicate exception] state that gun manufacturers' conduct falls within the predicate exception if they aid, abet, or conspire with anyone undertaking certain conduct," and "[n]either the aiding-and-abetting statute[, 18 U.S.C. § 2(a),] nor the conspiracy statute[, 18 U.S.C. § 371] . . . [say] anything about guns." Appellee's Brief at 23. The City also argues that if the subparts of the predicate exception expressly include violations of general laws, the subparts cannot be read to bar this case. The Manufacturers' counter that "[a]iding-and-abetting and conspiracy liability never occurs in a vacuum, but only as a function of aiding-and-abetting or conspiring in some direct violation of the law." Manufacturers' Reply Brief at 20. The Manufacturers also argue that "[u]nder § 7903(5)(A)(iii), aiding and abetting and conspiracy liability only arises based upon an underlying violation of a statute directly applicable to the sale or marketing of the firearm." Id.

■ Even assuming that the PLCAA requires an underlying violation of a statute facially applicable to the sale or marketing of a firearm, we cannot say that the City did not make such allegations. We note that the Indiana Supreme Court held that unlawful conduct was not a requirement of a public nuisance claim and that "generally, gun regulatory laws leave room for the defendants to be in compliance with those regulations while still acting unreasonably and creating a public nuisance." City of Gary, 801 N.E.2d at 1232–1233, 1235. However, the Indiana Supreme Court referred to "Indiana Code sections 35–47–2.5–1 through 15, dealing with the sale of handguns" and held that "[s]ome of the activity alleged in the complaint presumably violates those regulatory statutes, either directly in the case of the dealers or as knowing accomplices in the case of the other defendants." Id. at 1234–1235. The court also noted that the City alleged that the Manufacturers "are on notice of the concentration of illegal handgun sales in a small percentage of dealers, and the ability to control distribution through these dealers, but continue to facilitate unlawful sales by failing to curtail supply." Id. at 1235 (emphasis added). Thus, even assuming that the PLCAA requires an underlying violation of a statute directly applicable to the sale or marketing of a firearm, the City alleged such viola-

tions in their complaint.[7] We conclude that the specific context does not create an ambiguous meaning of the predicate exception with regard to the particular dispute in this case.

The Manufacturers argue that the broader context of the PLCAA supports the conclusion that the City's claims do not fit within the predicate exception. The Manufacturers argue that the City's complaint "is precisely the type of lawsuit Congress described in § 7901(a)(3),[8] precisely the type of liability that Congress disapproved in § 7901(a)(5) [9] and § 7901(a)(6),[10] and precisely the type of lawsuit that Congress declared it was prohibiting in the first stated purpose of the PLCAA, § 7901(b)(1)." [11] Manufacturers' Brief at 34. The Manufacturers also point out that

"[a]s its title suggests ... the [PLCAA] was designed to protect manufacturers and dealers engaged in 'lawful commerce in arms' from lawsuits seeking to hold them liable for the criminal misuse of their products by others." Id. at 32 (footnote omitted). However, the City alleges that the Manufacturers engaged in unlawful conduct. Based on the City's allegations, we cannot say that the Manufacturers are engaged in the "lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products," 15 U.S.C. § 7901(a)(5) (emphasis added), or that the harm "is solely caused by others." 15 U.S.C. § 7901(a)(6).

We also note that Congress made the following findings in the PLCAA:

7. The Manufacturers rely on *Ileto v. Glock, Inc.*, 421 F.Supp.2d 1274 (C.D.Cal.2006). In Ileto, several plaintiffs representing victims in a shooting argued that manufacturers of firearms violated California's public nuisance statute, which, they alleged, applied to the sale or marketing of firearms. 421 F.Supp.2d at 1282, 1284. The court held that "[i]f Plaintiffs were to succeed in this action, the result would be that Defendants would have to change their behavior to avoid further liability in California, even if they did not violate any State or Federal laws specifically governing the sale or marketing of firearms." Id. at 1291. Here, unlike in Ileto, the City alleged activity on the part of the Manufacturers that facilitates unlawful sales and violates regulatory statutes.

8. 15 U.S.C. § 7901(a)(3) provides that "[l]awsuits have been commenced against manufacturers, distributors, dealers, and importers of firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals."

9. 15 U.S.C. § 7901(a)(5) provides:

Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale

to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

10. 15 U.S.C. § 7901(a)(6) provides:

The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

11. 15 U.S.C. § 7901(b)(1) provides that one of the purposes of the PLCAA is "[t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended."

(7) The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law. The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States. Such an expansion of liability would constitute a deprivation of the rights, privileges, and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution.

(8) The liability actions commenced or contemplated by the Federal Government, States, municipalities, private interest groups and others attempt to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees thereby threatening the Separation of Powers doctrine and weakening and undermining important principles of federalism, State sovereignty and comity between the sister States.

15 U.S.C. § 7901(a)(7) and (8). Indiana's public nuisance statute was a legislative enactment, which the Indiana Supreme Court interpreted as applying to the City's claim. Thus, we conclude that the City's claim is not an attempt to expand the common law and that it is not an attempt to circumvent the legislative branch of government. *See City of New York*, 401 F.Supp.2d at 266 (holding that the law is not only the language that the legislature adopts, but what the courts construe to be its meaning in individual cases).

Based on the language of the predicate exception, the specific context of the predicate exception, and the broader context of the PLCAA, we conclude that the predicate exception is unambiguous.[12] Because the City's complaint and the Indiana Supreme Court's opinion indicate that the City alleged that the Manufacturers "violated a State or Federal statute applicable to the sale or marketing of the product," we conclude that the City's action falls under the predicate exception and is not barred by the PLCAA.[13] Because we con-

---

**12.** Because we conclude that the PLCAA is unambiguous, we need not address canons of statutory interpretation. *See U.S. v. Turkette*, 452 U.S. 576, 581, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) ("The rule of ejusdem generis ... comes into play only when there is some uncertainty as to the meaning of a particular clause in a statute."); *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 578–579, 100 S.Ct. 1889, 1891, 64 L.Ed.2d 525 (1980) (holding that the principle of statutory construction of *ejusdem generis* is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty); NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION, § 47:18 (6th ed. 2000) ("It is generally held that the rule of *ejusdem generis* is merely a rule of construction and is only applicable where legislative intent or language expressing that intent is unclear.").

**13.** The Manufacturers and the City both point to legislative history supporting their positions. We acknowledge that Senator Graham, one of the PLCAA's sponsors, stated, "Yet another example are the suits pending against members of the firearms industry by cities like Gary, IN and Cleveland, OH even though the States of Indiana and Ohio have themselves passed State laws similar in purpose and intent to S. 397." 151 Cong. Rec. S9374–01, S9394. Even assuming that we examine legislative history, we cannot say that Senator Graham's mention of this case is dispositive. "Legislative debates are expres-

clude that the predicate exception applies and that the PLCAA does not bar the City's claims, we need not address the remaining issues.

For the foregoing reasons, we affirm the trial court's denial of the Manufacturers' motion to dismiss or, in the alternative, motion for judgment on the pleadings in the action brought by the City.

Affirmed.

RILEY, J. and FRIEDLANDER, J. concur.

sive of the views and motives of individual members, and hence may not be resorted to, in ascertaining the meaning and purpose of the lawmaking body, and ... it is impossible to determine with certainty what construction was put upon an act by the members of the legislative body that passed it by resorting to the speeches of individual members thereof. Those who did not speak may not have agreed with those who did; and those who spoke might differ from each other...." NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION, § 48:13 (6th ed.2000) (internal citations and quotations omitted).