Baker, Judge. Two motorists were involved in a car accident. During the subsequent legal proceedings, the Indiana Insurance Guaranty Association (IIGA) intervened as the real party in interest, and the trial court substituted the IIGA for the original insurance company defendant. The IIGA filed a motion to dismiss, arguing that the tortfea-sor’s insurance company’s denial of coverage did not render him uninsured such that the other motorist seeking damages could not recover under his own insurance policy’s provision on uninsured automobiles. The IIGA brings this interlocutory appeal following the trial court’s denial of its motion. Finding no error with the trial court’s denial of the motion to dismiss, we affirm. Facts.. On August 18, 2015, Carlos Smith and Martin Torres were involved in a car accident in South Bend. At the time of the accident, Smith was insured by Affirmative Casualty Insurance Company (Affirmative) and Torres was insured by ACCC 'Insurance Company (ACCC). On November 10, 2015, ACCC denied coverage to Torres based on his lack of cooperation with the accident investigation. On March 29, 2016, Smith filed a complaint against Torres and Affirmative, alleging that Torres negligently caused Smith’s injuries and that Torres was uninsured at the time of the accident 'based on ACCC’s denial of coverage. He also alleged that, under the uninsured motorist provision of his own insurance policy, Affirmative was ■. liable for the damages he suffered as a result of an accident with an uninsured driver. The: Affirmative policy defines an “uninsured automobile” as: 1. an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amount specified by the financial responsibility law of the state, in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to, any person or organization legally responsible for the use of such automobile .... [[Image here]] 3. an automobile with respect to which there is a bodily injury liability insurance policy applicable at the time of the accident but the Company writing the same is or becomes insolvent subsequent to the. date of an accident. ... Appellant’s App. Vol. II p, 44. Five days before Smith filed his complaint, an order of liquidation was entered against Affirmative. The IIGA was subsequently deemed the insolvent insurer under Indiana. Code section 27-6-8-7(a)(2).[1] The IIGA intervened in the case as the real party in interest, and the trial court substituted the IIGA for Affirmative as the defendant. On December 7, 2016,' the IIGA filed a motion to dismiss, arguing that AGCC’s denial of coverage did not render Torres uninsured under Indiana law or the Affirmative policy. A hearing took place on .January 11, 2017, and that same day, the trial court denied the IIGA’s motion. The IIGA now appeals. Discussion and Decision The IIGA argues that the trial court erred in denying its motion to dismiss. Specifically, it argues that Torres was not uninsured, and that as a result, Smith did not have' an actionable claim against Affirmative from which he could recover damages. A motion to dismiss under Trial'Rule 12(B)(6) “tests .the legal sufficiency -of a complaint: that is, whether the allegations in the cohiplaint establish any set of circumstances under which a'plaintiff would be entitled to relief.” Lockhart v. State, 38 N.E.3d 215, 217 (Ind. Ct. App. 2015) (internal quotations omitted). We apply a de novo standard of review to a trial court’s ruling on a Trial Rule 12(B)(6) motion to dismiss. Id. Statutory interpretation is a function for the courts, and our goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes. Clark Cnty. Drainage Bd. v. Isgrigg, 966 N.E.2d 678, 680 (Ind. Ct. App. 2012). “The Court .presumes that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute’s underlying policy and goals.” Nicoson v. State, 938 N.E.2d 660, 663 (Ind. 2010). We review matters of statutory interpretation de novo because they present pure questions of law. Id, . ■ When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. Ryan v. Lawyers Title Ins. Corp., 959 N.E.2d 870, 875 (Ind. Ct. App. 2011). We must determine whether the language of the contract is ambiguous. Id. The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. Id. We must accept an interpretation of the contract that harmonizes its provisions. Id. Indiana Code section 27-7-5-4(a) defines “uninsured motorist vehicle” as follows: For the purpose of this chapter, the term uninsured motor vehicle, subject to the terms and conditions of such coverage, means a motor vehicle without liability insurance or a motor vehicle not otherwise in. compliance with the financial responsibility requirements of IC 9-25 [governing minimum amounts of financial responsibility] or any similar requirements applicable under the law of another state .... The Affirmative policy defined an “uninsured automobile” as 1. an automobile or 'trailer with respect to the ownership, maintenance or use of which there is, in at least the amount specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile[.] [[Image here]] 3. an automobile with respect to which there is a bodily injury liability insurance policy applicable at the time of the accident but the Company writing the same is or becomes insolvent subsequent to the date of an accident. Appellant’s App’. Vol. II ’p. 44 (emphasis added). The Affirmative, policy lists five exclusions to the definition of uninsured automobile, none of which involve a vehicle that was denied coverage. Whether Torres’s vehicle is considered an uninsured motor vehicle under tlie law is a matter of first impression. Our General Assembly enacted a statute governing uninsured motorist vehicle coverage[2] because it wanted to ensure that motorists have insurance coverage in case of accidents and collisions. Indeed, our General Assembly considers uninsured motorist coverage so important that it requires all insurance companies selling insurance in our state to provide it .to every motorist who purchases a motor vehicle insurance liability policy. I.C. § 27-7-5-2(a), The statute governing uninsured motorist vehicle coverage “provides broad protection to insureds injured in accidents with financially irresponsible motorists.” United Nat’l Ins. Co. v. DePrizio, 705 N.E.2d 455, 464 (Ind. 1999). “Because the statute is remedial, it is to be liberally construed.” Corr v. Am. Family Ins., 767 N.E.2d 535, 540 (Ind. 2002). A tortfeasor vehicle that had its coverage denied falls within the category of “motor vehicle[s] not otherwise in compliance with the financial responsibility requirements,” I.C. § 27-7-5-4(a), because a denial of coverage necessarily means that, although the tortfeasor vehicle technically has insurance, the tortfeasor is without insurance that can actually coyer the damages. In other words, following a denial of coverage, a tortfeasor vehicle cannot be in compliance with our statutory financial responsibility requirements. We therefore interpret the statute’s definition of “uninsured motor vehicle” to include motor vehicles that had liability insurance at the time of an accident but that wei-e later denied coverage. To interpret the statute otherwise would be contrary to public policy. First, motorists buy insurance and pay insurance premiums precisely to have coverage when they need it, including, when they are involved in accidents with tortfeasors who do not have vehicle insurance. To deny motorists uninsured ¡motorist coverage would allow insurance companies to play a game of “gotcha” with .policy owners that would defeat the purpose of buying insurance in the first place—insurance, companies would reap the benefit of motorists buying their policies while motorists would reap none. Second, if a tortfeasor does not have vehicle insurance, then a motorist with insurance should be able to recover damages under his own insurance policy’s provision on uninsured motorists. But under the circumstances with which we are presented here, denying coverage to a motorist under his own insurance policy because a tortfea-sor’s insurance company denied coverage to the tortfeasor would preclude the motorist from recovering any damages at all from the accident. In short, denying a motorist coverage under his own policy’s provision on uninsured motorists puts him in a worse position than he would be in if the tortfeasor had no vehicle insurance. This result would defeat our General Assembly’s goal of ensuring coverage for motorists. In addition to finding that Torres’s vehicle is an uninsured motor vehicle under the law, we find that it falls within Affirmative’s definition of uninsured automobile. Although Torres technically had vehicle insurance at the time of the August 18, 2015, accident, ACCC denied him coverage for that accident. As a result, Torres did not have vehicle insurance from which Smith could benefit. Therefore, Torres’s vehicle fits squarely into Affirmative’s definition of an uninsured automobile ■ as an automobile for which there is “no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person ■ or organization legally responsible for the use of such automobile[.]” Appellant’s App. Yol. II p. 44 (emphasis added). Torres did not have insurance that could be applied to the damages from the accident; his vehicle was, therefore, an uninsured automobile. We conelúde that, as a matter of law and public policy, a vehicle that has liability insurance bút was denied coverage meets the statutory definition of uninsured motor vehicle. We also conclude that Torres’s vehicle meets Affirmative’s' definition of uninsured automobile. Accordingly, Smith alleged in his complaint a set of circumstances under which he would be entitled to relief. The trial court did not err in denying the IIGA’s motion to dismiss. The judgment of the trial court is affirmed. Mathias, J., concurs. Altice, J., concurs in result with a separate opinion. . This statute provides that the IIGA shall ,"[b]e deemed the insurer to the extent of its obligation on the covered claims as limited by this chapter and to this extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent. ...” I.C. § 27-6-8-7(a)(2). . Ind. Code ch. 27-7-5 et. seq.