

FILED

May 23 2019, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael E. Tolbert
Tolbert & Tolbert, LLC
Gary, Indiana

Jonathan E. Lowy
Brady Center to Prevent Gun Violence
Washington, DC

ATTORNEYS FOR
APPELLEES/CROSS-APPELLANTS
STURM RUGER & COMPANY, INC.
& COLT'S MANUFACTURING
COMPANY LLC

Terence M. Austgen
Elizabeth M. Bezak
Burke Costanza & Carberry LLP
Merrillville, Indiana

ATTORNEY FOR
APPELLEE/CROSS-
APPELLANT STURM RUGER &
COMPANY, INC.

James B. Vogts
Swanson, Martin & Bell, LLP
Chicago, Illinois

ATTORNEYS FOR
INTERVENOR THE STATE OF
INDIANA

Curtis T. Hill, Jr.
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

Kian Hudson
Julia C. Payne
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE SENATORS JIM TOMES, MARK MESSMER, AND DENNIS KRUSE, AND REPRESENTATIVES BEN SMALTZ, JERRY TORR, AND GREG STEUERWALD, MEMBERS OF THE INDIANA GENERAL ASSEMBLY

James Bopp, Jr.
Corrine L. Youngs
The Bopp Law Firm, PC
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

City of Gary,

*Appellant-Plaintiff/Cross-Appellee,*

v.

Smith & Wesson Corp., Sturm, Ruger & Company, Inc., Colt's Manufacturing Company, LLC, Beretta U.S.A. Corp., Phoenix Arms, Glock, Inc., Beemiller, Inc. d/b/a High-Point Firearms, Browning Arms, and Taurus International Manufacturing, Inc.,

*Appellees-Defendants/Cross-Appellants*

May 23, 2019

Court of Appeals Case No. 18A-CT-181

Appeal from the Lake Superior Court

The Honorable John M. Sedia, Judge

Trial Court Cause No. 45D01-1211-CT-233

**Crone, Judge.**

# Case Summary

The City of Gary ("the City") appeals the trial court's grant of judgment on the pleadings on its amended complaint against various handgun manufacturers ("the Manufacturers"),[1] which includes claims for public nuisance, negligent distribution and marketing, and negligent design. The trial court ruled that the City's claims are barred by a 2015 amendment ("the Amendment") to Indiana Code Section 34-12-3-3 ("the Immunity Statute"), which made the statute retroactive to four days before the City filed its original complaint in 1999. The court also ruled that the Manufacturers are not entitled to attorney's fees and costs under Indiana Code Section 34-12-3-4. The court further ruled that, contrary to an earlier opinion from this Court in this case, the City's claims are also barred by the federal Protection of Lawful Commerce in Arms Act ("the PLCAA").

On appeal, the City argues that the Amendment is unconstitutional and that its claims are not barred by either the Immunity Statute or the PLCAA. The State of Indiana has intervened to defend the Amendment's constitutionality. The Manufacturers argue that the City's lawsuit is an unlawful attempt to regulate firearms and that the trial court erred in denying them attorney's fees and costs

---

[1] The Manufacturers are Smith & Wesson Corp., Ruger & Co., Inc., Beretta U.S.A. Corp., Colt's Manufacturing Company, LLC, Phoenix Arms, Glock, Inc., Beemiller, Inc. d/b/a Hi-Point Firearms, Browning Arms, and Taurus International Manufacturing, Inc.

under Indiana Code Section 34-12-3-4. We conclude as follows: (1) the City's lawsuit is not an unlawful attempt to regulate firearms; (2) the City has failed to establish that the Amendment is unconstitutional; (3) the Immunity Statute does not bar all of the City's claims; (4) the Manufacturers are not entitled to attorney's fees and costs; and (5) pursuant to the law of the case doctrine, we reaffirm our prior holding that the PLCAA does not bar the City's claims. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

[3] In August 1999, the City lodged a complaint for damages and injunctive relief against the Manufacturers and various handgun distributors and retail dealers. The complaint was dated August 27 and was file-stamped by the trial court clerk on August 30. The defendants filed a motion to dismiss for failure to state a claim pursuant to Indiana Trial Rule 12(B)(6), which the trial court granted.

[4] In January 2001, the City filed an amended complaint. In the first appeal in this case, the Indiana Supreme Court described the amended complaint as follows:

> The complaint alleges that manufacturers of handguns typically sell to "distributors" who resell at wholesale to "dealers" who in turn sell at retail to the general public. Some categories of persons are prohibited by law from purchasing guns, and all dealer-defendants are alleged to have knowingly sold to illegal

buyers through intermediaries in "straw purchases".…[2]  Some other practices of dealers are also alleged to generate illegal purchases.  These include failure by some dealers to obtain the required information for background checks required by federal law, sales of a number of guns to the same person, and intentional "diversion" of guns by some dealers to illegal purchasers.

The City alleges that the manufacturers know of these illegal retail sales of handguns, and know that a small percentage of dealers, including the dealer-defendants here, account for a large portion of illegally obtained handguns.  The City alleges the manufacturers and distributors have the ability to change the distribution system to prevent these unlawful sales but have intentionally failed to do so.

The City alleges that these and other practices generate substantial additional cost to the public in general and the City in particular.  Possession of unlawfully purchased guns is claimed to contribute to crime that requires expenditure of public resources in addition to the obvious harm to the victims.  The complaint alleges that seventy murders with handguns took place in Gary in 1997, and another fifty-four in 1998.  From 1997 through 2000, 2,136 handguns used in crimes were recovered.  Of these, 764 were sold through dealers who are defendants in this suit.  The City also asserts that harm is suffered by the City at the time of the sale of an illegal handgun because these unlawful sales generate additional requirements to investigate and prosecute the violations of law.

In addition to challenging the distribution practice of the defendants, the City also alleges negligent design of the handguns by the manufacturers that contributes to these injuries.  Finally,

---

[2] A straw purchaser "pose[s] as the buyer (the straw or middleman) of a firearm actually intended for" another person.  *KS&E Sports v. Runnels*, 72 N.E.3d 892, 897 (Ind. 2017).

the City alleges that the manufacturers engage in deceptive advertising of their product by asserting that a gun in the home offers additional safety for the occupants when in fact the contrary is the case.

Count I of the complaint alleges that these facts support a claim for public nuisance.[3]  Count II asserts a claim for negligence in distribution of guns and Count III presents a claim for their negligent design.  All Counts request compensatory and punitive damages and injunctive relief.

*City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1227-29 (Ind. 2003) ("*Gary 1*").

[5]     The defendants filed a motion to dismiss the City's amended complaint for failure to state a claim, which the trial court granted.  On appeal, another panel of this Court affirmed in part and reversed in part.  Our supreme court granted transfer, reversed the trial court's dismissal, and remanded for further proceedings on all three counts.  *Id*. at 1249.

[6]     In the meantime, the Indiana General Assembly had enacted the Immunity Statute, which became effective April 18, 2001.  The statute states in pertinent part that, with certain exceptions not relevant here,

---

[3] *See* Ind. Code § 32-30-6-6 ("Whatever is:  (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.").  "If a proper case is made, the nuisance may be enjoined or abated and damages recovered for the nuisance."  Ind. Code § 32-30-6-8.  A civil action to abate or enjoin a nuisance may be brought by "the attorney of any city or town in which a nuisance exists."  Ind. Code § 32-30-6-7(b).

a person[4] may not bring or maintain an action against a firearms or ammunition manufacturer, trade association, or seller for:

(1) recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, the lawful:

> (A) design;
>
> (B) manufacture;
>
> (C) marketing; or
>
> (D) sale;

of a firearm or ammunition for a firearm; or

(2) recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party.

Ind. Code § 34-12-3-3.

[7] In 2005, the United States Congress enacted the PLCAA, which provides that "[a] qualified civil liability action may not be brought in any Federal or State court" and that "[a] qualified civil liability action that is pending on October 26, 2005, shall be immediately dismissed by the court in which the action was brought or is currently pending." 15 U.S.C. § 7902(a), -(b). A qualified civil liability action is

---

[4] Indiana Code Section 34-12-3-2 defines "person" for purposes of that chapter as "a human being, corporation, limited liability company, partnership, unincorporated association, or governmental entity."

a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product [e.g., a firearm], or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party ….

15 U.S.C. § 7903(5)(A). A qualified civil liability action does *not* include

(iii) an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute *applicable to the sale or marketing of the product*, and the violation was a proximate cause of the harm for which relief is sought, including --

(I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under [federal law].

*Id*. (emphasis added). "This exception has been referred to as the 'predicate exception' because its operation requires an underlying or predicate statutory

violation." *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 429-30 (Ind. Ct. App. 2007) ("*Gary 2*"), *trans. denied* (2009).

[8] In November 2005, the Manufacturers filed a motion to dismiss, asserting that the PLCAA barred the City's claims. The trial court denied the motion on the basis that PLCAA was unconstitutional. On appeal, another panel of this Court affirmed on a different basis:[5] that the City's claims fall under the predicate exception and therefore are not barred by the PLCAA. *See id*. at 431 ("The word 'applicable' is not defined by the statute but is generally defined as '[c]apable of being applied.' American Heritage Dictionary of the English Language 63 (1981). We cannot say that the word 'applicable' in the predicate exception is ambiguous. On the face of the language, Indiana's public nuisance statute appears applicable to the sale or marketing of firearms."). The *Gary 2* court went on to say, "even assuming that the PLCAA requires an underlying violation of a statute directly applicable to the sale or marketing of a firearm, the City alleged such violations in their complaint." *Id*. at 432-33.

[9] On May 4, 2015, Governor Mike Pence signed a bill (the Amendment) that made the Immunity Statute retroactive to August 26, 1999, four days before the City filed its original complaint. Ind. Public Law 106-2015, § 4; *see also id*. at § 1 (amending Ind. Code § 34-12-3-0.1 to state, "This chapter applies to actions filed before, after, or on April 18, 2001."). In November 2015, the Manufacturers filed a motion for judgment on the pleadings pursuant to

---

[5] Consequently, the City's citations to the trial court's ruling in its appellate briefs are not well taken.

Indiana Trial Rule 12(C). The Manufacturers asserted that the Amendment now compelled dismissal of the City's claims pursuant to the Immunity Statute, and they renewed their argument that they are also entitled to dismissal under the PLCAA. In response, the City asserted that the Amendment, the Immunity Statute, and the PLCAA are either inapplicable or unconstitutional.

[10] In January 2018, after a hearing, the trial court issued an order granting the Manufacturers' motion. The court did not address the City's constitutional challenges to the Amendment but concluded that the Manufacturers are entitled to immunity under the Immunity Statute because there was no allegation that their "sales practices violated any specific statute, regulation or ordinance related directly to the sale of firearms." Appealed Order at 4. Likewise, the court did not address the City's constitutional challenges to the PLCAA but concluded that the Manufacturers are entitled to immunity under that statute because the City had "alleged no violations of any Indiana or federal statutes specifically applicable to the sale or marketing of firearms." *Id*. at 5. The court further stated that case law subsequent to this Court's opinion in *Gary 2* "has made it clear that [violations] of public nuisance statutes do not meet the definition of a State or Federal statute applicable to the sale or marketing of firearms …." *Id*. The court entered a final appealable judgment in the Manufacturers' favor but denied their request for attorney's fees and costs under Indiana Code Section 34-12-3-4.

[11] The City now appeals the grant of the Manufacturers' motion for judgment on the pleadings, and the Manufacturers cross-appeal the denial of attorney's fees

and costs. The State of Indiana has intervened to defend the Amendment's constitutionality.[6] Several members of the General Assembly have filed an amicus brief urging affirmance of the trial court's ruling.[7] Additional facts will be provided as necessary.

## Discussion and Decision

[12] Where, as here, a Trial Rule 12(C) motion for judgment on the pleadings essentially argues that the complaint fails to state a claim upon which relief can be granted, we treat it as a Trial Rule 12(B)(6) motion. *KS&E Sports v. Runnels*, 72 N.E.3d 892, 898 (Ind. 2017). "We view motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of action on their merits." *Schrage v. Audrey R. Seberger Living Tr.*, 52 N.E.3d 54, 59 (Ind. Ct. App. 2016). Trial Rule 12(B)(6) motions test the legal sufficiency of a complaint, i.e., whether the allegations in the complaint establish any set of circumstances under which the plaintiff would be entitled to relief. *Veolia Water Indpls., LLC v. Nat'l Trust Ins. Co.*, 3 N.E.3d 1, 4 (Ind. 2014). When evaluating the trial court's ruling, we accept the facts alleged in the complaint as true and should not only consider the pleadings in the light most favorable to the plaintiff, but also draw every reasonable inference in favor of

---

[6] *See* Ind. Code § 34-33.1-1-1(a) ("If the constitutionality of a state statute … affecting the public interest is called into question in an action, suit, or proceeding in any court to which any agency, officer, or employee of the state is not a party, the court shall certify this fact to the attorney general and shall permit the attorney general to intervene on behalf of the state and present … arguments on the question of constitutionality.").

[7] Those members are Senators Jim Tomes, Mark Messmer, and Dennis Kruse, and Representatives Ben Smaltz, Jerry Torr, and Greg Steuerwald.

the nonmoving party. *Id*. at 4-5. We affirm the trial court's grant of the motion only when it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id*. at 5. We review the trial court's dismissal de novo, *id*., and we may affirm if it is sustainable on any basis in the record. *Ward v. Carter*, 90 N.E.3d 660, 662 (Ind. 2018), *cert. denied*.

## Section 1 – The City's lawsuit is not an unlawful attempt to regulate firearms.

[13] Because it is potentially dispositive, we first address the Manufacturers' argument, which they did not raise in their motion for judgment on the pleadings,[8] that we may affirm the trial court's ruling on their motion because the City's lawsuit is an unlawful attempt to regulate firearms.[9] In *Gary 1*, our supreme court rejected the trial court's holding to this effect, which was based

---

[8] "It has long been the general rule in Indiana that an argument or issue presented for the first time on appeal is waived for purposes of appellate review." *Ind. Bureau of Motor Vehicles v. Gurtner*, 27 N.E.3d 306, 311 (Ind. Ct. App. 2015). "More recently, however, our supreme court has signaled a shift away from this rule, at least as far as appellees are concerned." *Id*. at 312. "In *Citimortgage v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012), the court stated that a party who has prevailed at the trial court, i.e., the appellee, 'may defend the trial court's ruling on any grounds, including grounds not raised at trial.'" *Id*. Thus, "[u]nder *Citimortgage*, an appellant may not present an argument that was not presented to the trial court, but this limitation does not apply to an appellee who seeks to affirm the trial court's judgment." *Id*. "This rule is consistent with the presumption in all appeals that a trial court's judgment is correct as well as the general rule that on appeal we will affirm a judgment on any theory supported by the record." *Id*.

[9] Amici raise the same argument in different guises. They first argue that the City's alleged attempt to regulate firearms is preempted by the Immunity Statute and Indiana Code Chapter 35-47-11.1, which we largely reject for the reasons given *infra*. They also argue that the City's alleged attempt to regulate firearms violates Indiana's separation of powers doctrine; this argument ignores our supreme court's conclusion in *Gary 1* that the "lawsuit is no more regulation of firearms than a suit to enjoin any form of nuisance is a regulation of the activity[,]" 801 N.E.2d at 1239, and also disregards that the legislature specifically granted municipalities the authority to bring public nuisance claims and seek injunctive relief to enforce "a valid statute, rule, or ordinance" against firearms manufacturers that engage in unlawful conduct. Ind. Code § 32-30-6-7(b); Ind. Code § 34-12-3-5(3).

on Indiana Code Chapter 35-47-11. *See* Ind. Code § 35-47-11-2 (providing that a governmental "unit may not regulate in any manner the ownership, possession, sale, transfer, or transportation of firearms … or ammunition[,]" with certain inapplicable exceptions). The *Gary 1* court stated, "This lawsuit does not seek to implement a regulatory scheme. It seeks redress under existing state law of nuisance and negligence." 801 N.E.2d at 1238. "Indiana statutes expressly authorize the City to seek relief against public nuisances.… Its lawsuit is no more regulation of firearms than a suit to enjoin any form of nuisance is a regulation of the activity." *Id*. at 1239.

[14] In 2011, the legislature repealed Section 35-47-11-2 and enacted Chapter 35-47-11.1. Indiana Code Section 35-47-11.1-2 states that, with certain inapplicable exceptions, "a political subdivision may not regulate: (1) firearms, ammunition, and firearm accessories; (2) the ownership, possession, carrying, transportation, registration, transfer, and storage of firearms, ammunition, and firearm accessories; and (3) commerce in and taxation of firearms, firearm ammunition, and firearm accessories." Indiana Code Section 35-47-11.1-3 states,

> Any provision of an ordinance, measure, enactment, rule, or policy or exercise of proprietary authority of a political subdivision or of an employee or agent of a political subdivision acting in an official capacity:
>
> (1) enacted or undertaken before, on, or after June 30, 2011; and
>
> (2) that pertains to or affects the matters listed in section 2 of this chapter;

is void.

The Manufacturers argue that the City's lawsuit is a "measure" or "policy" that was undertaken before June 30, 2011, pertains to or affects the matters listed in Section 35-47-11.1-2, and is therefore void. Appellees' Br. at 26.[10]

[15] We disagree with the Manufacturers' interpretation of the statute. "Statutory interpretation is a function for the courts, and our goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes." *Ind. Ins. Guar. Ass'n v. Smith*, 82 N.E.3d 383, 386 (Ind. Ct. App. 2017). We presume "that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id*. (quoting *Nicoson v. State*, 938 N.E.2d 660, 663 (Ind. 2010)). We endeavor "to give statutory words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise." *Rush v. Elkhart Cty. Plan Comm'n*, 698 N.E.2d 1211, 1215 (Ind. Ct. App. 1998), *trans. denied*. "If the legislature has not defined a word, we may properly consult English dictionaries to determine the plain and ordinary meaning of words." *Montalvo v. State ex rel. Zoeller*, 27 N.E.3d 795, 799 (Ind. Ct. App. 2015), *trans. denied*. "[I]t is just as important to recognize what a statute does not say as it is to recognize what it does say. A court may not read into a

---

[10] The City does not argue that our review of this issue should be precluded by the law of the case doctrine, perhaps because of the legislative changes since *Gary 1*.

statute that which is not the expressed intent of the legislature." *Rush*, 698 N.E.2d at 1215 (citation omitted). "We review matters of statutory interpretation de novo because they present pure questions of law." *Smith*, 82 N.E.3d at 386.

[16] The plain meaning of "measure" is "a step planned or taken as a means to an end ... *specifically*: a proposed legislative act[.]" MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/measure (last visited May 1, 2019). And the plain meaning of "policy" is "a high-level overall plan embracing the general goals and acceptable procedures especially of a governmental body[.]" *Id.*, https://www.merriam-webster.com/dictionary/policy (last visited May 1, 2019). The City's lawsuit does not fall within either definition. To the extent the Manufacturers argue that the City's lawsuit advances its "policy views" or "goals" regarding firearms, Appellees' Br. at 27, we note that such intangibles are not mentioned in Section 35-47-11.1-3 and do not have "provisions" that are subject to being voided by that statute. *See* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "provision" as "[a] clause in a statute, contract, or other legal instrument").[11] The legislature knows how to prohibit firearms-related lawsuits when it wants to. *See* Ind. Code § 34-12-3-3 ("a person may not bring or

---

[11] The City's amended complaint has "provisions," but the Manufacturers do not specifically argue that the complaint itself is a "measure" or "policy" for purposes of Section 35-47-11.1-3. The Manufacturers cite several cases for the proposition that "[g]overnmental power may be exercised through application of law in a civil suit as by statute." Appellees' Br. at 27. The Manufacturers cited some of the same cases for a similar proposition in *Gary 1*. 801 N.E.2d at 1239. Our supreme court did not find them persuasive, nor do we.

maintain *an action* against a firearms or ammunition manufacturer") (emphasis added). We find no such intent expressed in Section 35-47-11.1-3. Consequently, we reject the Manufacturers' argument.[12]

## Section 2 – The City has failed to establish that the Amendment is unconstitutional.

The City raises two constitutional challenges to the Amendment: (1) the Amendment is an unconstitutional special law; (2) the Amendment violates its federal due process rights.[13] In considering constitutional challenges to a statute, we accord the statute every reasonable presumption supporting its validity and place the burden on the challenger to show unconstitutionality. *Ledbetter v. Hunter*, 652 N.E.2d 543, 545 (Ind. Ct. App. 1995). This presumption controls until it is clearly overcome by a contrary showing. *Id*. A challenge to a statute's constitutionality is a pure question of law that we review de novo. *State v. Thakar*, 82 N.E.3d 257, 259 (Ind. 2017).

### 2.1 – The City has failed to establish that the Amendment is an unconstitutional special law.

Article 4, Section 22 of the Indiana Constitution prohibits "special" legislation on certain subjects, and Section 23 provides that in those cases and "in all other

---

[12] We also reject the Manufacturers' argument that the City has no standing to challenge the constitutionality of the Amendment, which is based on their circular argument that the legislature prohibited cities from regulating firearms and that the City's lawsuit is an unlawful attempt to do so.

[13] The City also asserts that the Amendment violates the separation of powers doctrine and the Open Courts clause of Article 1, Section 12 of the Indiana Constitution, but it fails to support these assertions with cogent reasoning as required by Indiana Appellate Rule 46(A)(8)(a). Accordingly, we find them waived. *D.L. v. Pioneer Sch. Corp.*, 958 N.E.2d 1151, 1155 (Ind. Ct. App. 2011).

cases where a general law can be made applicable, all laws should be general, and of uniform operation throughout the state." "The terms 'general law' and "special law" have widely understood meanings." *Mun. City of S. Bend v. Kimsey*, 781 N.E.2d 683, 689 (Ind. 2003). "A statute is 'general' if it applies 'to all persons or places of a specified class throughout the state.' A statute is 'special' if it 'pertains to and affects a particular case, person, place, or thing, as opposed to the general public.'" *Id.* (quoting BLACK'S LAW DICTIONARY 890 (7th ed. 1999)). Generally, we first determine whether the law is general or special. *Id.* at 690. If the law is general, we then determine whether it is applied generally throughout the State; if it is special, we must determine whether it is constitutionally permissible. *Id.*

[19] The City argues that the Amendment is a constitutionally impermissible special law that targeted its case because the legislature "knew that the universe of potentially affected cases was finite and fixed" and "set the effective date one day before the date of the City's complaint." Appellant's Br. at 24. The State concedes that the legislature may well have enacted the Amendment "with the City's particular case in mind[,]" but argues that the Amendment is general because it "merely ensures that [Section 34-12-3-3] applies to *all* cases, including any case brought before the applicable date of the original [statute]." Intervenor's Br. at 21. In the alternative, the State argues that even if the Amendment is a special law, it is constitutionally permissible because it "ensured that [Section 34-12-3-3] would apply uniformly across the State by specifically applying the statutory immunity to the one case remaining outside

its reach – a case to which the law undoubtedly could have applied in the first place." *Id*. at 23. We find the State's alternative argument persuasive, and therefore we need not conclusively determine whether the Amendment is a general law or a special law.

### 2.2 – The City may not challenge the Amendment on federal due process grounds.

[20] The City further asserts that the Amendment retroactively deprives it of its allegedly vested property right to seek redress against the Manufacturers[14] in violation of the due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution. *See* U.S. CONST. amends. V ("No person shall … be deprived of life, liberty, or property, without due process of law") and XIV ("nor shall any State deprive any person of life, liberty, or property, without due process of law"). The State cites ample precedent for the proposition that the City, as "an agent subject to the control of the State," cannot assert a federal due process claim "against its principal, the

---

[14] Because we hold that the City may not challenge the Amendment on federal due process grounds, we need not determine whether the City has a vested property right to seek redress against the Manufacturers. We note, however, that there is a well-reasoned line of authority holding that "a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1141 (9th Cir. 2009) (quoting *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001)), *cert. denied* (2010). "The reason an accrued cause of action is not a vested property interest … until it results in a 'final unreviewable judgment,' is that it is inchoate and does not provide a certain expectation in that property interest." *Bowers v. Whitman*, 671 F.3d 905, 914 (9th Cir. 2012) (quoting *Ileto*, 565 F.3d at 1141). "In civil litigation, … no person has an absolute entitlement to the benefit of legal principles that prevailed at the time the case began, or even at the time of the bulk of the litigation. The legislature may change a statute of limitations at the last instant, extending or abrogating the remedy for an established wrong." *Tonya K. by Diane K. v. Bd. of Educ. of City of Chicago*, 847 F.2d 1243, 1247 (7th Cir. 1988). Moreover, it is well settled that "[t]he State remains free to create substantive defenses or immunities for use in adjudication – or to eliminate its statutorily created causes of action altogether[,]" and "the legislative determination provides all the process that is due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982).

State[.]" Intervenor's Br. at 25. *See, e.g.*, *Williams v. Mayor & City Council of Baltimore*, 289 U.S. 36, 40 (1933) ("A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator."); *Risty v. Chicago, Rock Island & Pac. Ry. Co.*, 270 U.S. 378, 390 (1926) ("The power of the state and its agencies over municipal corporations within its territory is not restrained by the provisions of the Fourteenth Amendment."); *Creek v. Vill. of Westhaven*, 80 F.3d 186, 193 (7th Cir. 1996) (distinguishing cases holding "that a municipality cannot interpose the Fourteenth Amendment between itself and the state of which it is the creature" from those involving a municipality and the federal government or another state); *City of Boston v. Mass. Port Auth.*, 444 F.2d 167, 168 n.1 (1st Cir. 1971) ("A municipality may assert a due process claim but not one attacking the laws of the state which created it.") (citing *Twp. of River Vale v. Town of Orangetown*, 403 F.2d 684 (2d Cir. 1968)). The City cites no persuasive authority to the contrary, so its federal due process claim fails.

## Section 3 – The Immunity Statute does not bar all of the City's claims against the Manufacturers.

Having disposed of the City's constitutional challenges to the Amendment, which makes the Immunity Statute applicable to the City's lawsuit, we now address the City's argument that the trial court erred in concluding that the statute immunizes the Manufacturers "from all the claims brought against them" in the lawsuit. Appealed Order at 4. As mentioned above, the

Immunity Statute provides that an action may not be brought or maintained against a firearms manufacturer for "recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, the lawful" design, manufacture, marketing, or sale of a firearm, or for "recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party." Ind. Code § 34-12-3-3(1) and -(2).[15]  In *KS&E Sports*, our supreme court described the statute as "unambiguous" and as "a quintessential immunity provision[,]" in that "[i]t forecloses aggrieved plaintiffs from bringing suit[,]" but the court acknowledged that "[t]he immunity conferred is limited and not absolute." 72 N.E.3d at 899, 900 (citation omitted).  "Immunity is a threshold legal issue suitable for review under [Trial] Rule 12(C)." *Id*. at 901.

### 3.1 – *The Immunity Statute bars recovery of damages resulting from the criminal or unlawful misuse of a firearm by a third party.*

[22]  At the outset, we observe that the parties do not dispute that Subsection 3(2) of the Immunity Statute bars recovery of damages resulting from the criminal or unlawful misuse of a firearm by a third party, which figure prominently in the City's amended complaint.  *See, e.g.*, Appellant's App. Vol. 2 at 83 ("As a result of the easy availability and continued use in crime in many of these handguns after they enter Gary, Gary has been damaged, and residents of Gary have been

---

[15] Indiana Code Section 34-12-3-5 provides in pertinent part, "Nothing in this chapter may be construed to prohibit a person from bringing or maintaining an action against a" firearms manufacturer for "[i]njunctive relief to enforce a valid statute, rule, or ordinance.  However, a person may not bring an action seeking injunctive relief if that action is barred under" the Immunity Statute.

and will continue to be killed and injured by these handguns."). We therefore affirm the trial court's entry of judgment on the pleadings as to those damages.

### 3.2 – The Immunity Statute does not bar recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, unlawful conduct as alleged in Count I of the City's amended complaint.

[23] By its own terms, Subsection 3(1) of the Immunity Statute does not bar an action for recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, the *unlawful* design, manufacture, marketing, or sale of a firearm. Both parties seem to agree that "unlawful" conduct in this context is conduct that violates a statute, ordinance, or regulation, as opposed to conduct that violates a duty of care arising solely out of tort law, i.e., negligent conduct. In *Gary 1* and *Gary 2*, the courts held that the City alleged in its public nuisance claim that the Manufacturers acted as "knowing accomplices" with firearms dealers in violating "regulatory statutes" governing handgun sales. *See Gary 1*, 801 N.E.2d at 1235 (referring to Ind. Code §§ 35-47-2.5-1 through -15, which are not cited in the City's amended complaint);[16] *Gary 2*, 875 N.E.2d at 432-33 ("[E]ven assuming that the PLCAA requires an underlying violation of a statute directly applicable to the sale or marketing of a firearm, the City alleged such violations in [its] complaint."); *see also, e.g.*, Appellant's App. Vol. 2 at 82 (City's amended complaint ¶ 65: "Defendants' conduct violates and undermines the

---

[16] The *Gary 1* court noted that these statutes "detail the procedure to be used by a dealer in every handgun transaction involving background checks and furnishing information on gun purchasers to the state police." 801 N.E.2d at 1234. Several provisions have been repealed from or added to Indiana Code Chapter 35-47-2.5 since *Gary 1*, but the Manufacturers do not argue that the revisions affect their potential liability.

laws, regulations, and public policies of the State of Indiana and the federal government, which, *inter alia*, restrict who may purchase, own, or carry handguns and other firearms, and require specific permitting procedures limiting access to deadly weapons."); *id*. at 83 (¶ 69: "Defendants' joint and several ongoing wrongful conduct relating to their creation, promotion, support, and supply of an illegitimate secondary market for handguns has created, maintained, and contributed to a public nuisance in the City of Gary.").

[24] The Manufacturers assert that although the City's allegations were deemed sufficient to state a public nuisance claim before the Immunity Statute was enacted, the City's failure to allege a specific statutory violation should result in the dismissal of that claim now that the Immunity Statute has been made retroactive. We disagree.[17] Indiana Trial Rule 8(A) provides in pertinent part, "To state a claim for relief …, a pleading must contain: (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for relief to which the pleader deems entitled." "Notice pleading merely requires pleading the operative facts in order to place the defendant on notice as to the evidence to be presented at trial." *Bunger v. Demming*, 40 N.E.3d 887, 902 (Ind. Ct. App. 2015), *trans. denied*. "A complaint's allegations are sufficient if they put a reasonable person on notice as to why the plaintiff

---

[17] The Manufacturers cite no authority for the proposition that the City was required to plead any matters in avoidance of a defense that did not become applicable to its amended complaint until 2015, or that the City should have sought leave to amend its complaint after the Amendment was enacted.

sues." *Id*. Indiana pleading rules do not require a complaint to include the statutory basis for recovery. *Daniels v. USS Agri-Chems.*, 965 F.2d 376, 381 (7th Cir. 1992). The City's amended complaint sufficiently alleges that the City is suing the Manufacturers for their role in the alleged violation of laws governing handgun sales, for which the City may be entitled to damages, injunctive relief, or abatement of a nuisance.[18]

Based on the foregoing, and based on our conclusion below that the PLCAA does not bar the City's claims, we reverse the trial court's entry of judgment on the pleadings as to Count I of the City's amended complaint and remand for further proceedings consistent with this opinion.

### 3.3 – The Immunity Statute does not bar recovery of damages resulting from, or injunctive relief relating to, unlawful conduct as alleged in Count II of the City's amended complaint.

Count II of the City's amended complaint asserts claims for negligent distribution and marketing. The Manufacturers contend that the Immunity

---

[18] The Manufacturers note that Indiana Code Sections 35-47-2.5-2 through -5 do not apply to transactions between firearms manufacturers and dealers. Ind. Code § 35-47-2.5-1. The relevant statutes deal with paperwork, background check, and identification verification requirements for dealers and purchasers. Indiana Code Section 35-47-2.5-13 provides, "Except as otherwise provided in this chapter, a dealer who knowingly or intentionally sells, rents, trades, or transfers a handgun in violation of this chapter commits a Class A misdemeanor." Indiana Code Section 35-42-2-4 provides in pertinent part that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]" "The law is well settled that an accomplice is equally as guilty as a principal." *Elwood v. State*, 673 N.E.2d 1, 2 (Ind. Ct. App. 1996). The law is also well settled that evidence of willful blindness to critical facts may suffice to establish a knowing violation of a criminal statute. *Mefford v. State*, 51 N.E.3d 327, 335-36 (Ind. Ct. App. 2016). The Manufacturers cite no authority holding that a party may not remotely aid, induce, or cause another person to commit an offense. *Cf. State v. Rios*, 172 P.3d 844, 846 (Ariz. Ct. App. 2007) ("One does not need to be present at the scene of a crime in order to be convicted as an accomplice: one can solicit another to commit the crime, provide the means to commit an offense, or command others to commit the crime, all from a location remote from the scene of the crime.").

Statute bars relief for any claims of negligent, as opposed to unlawful, conduct on their part. *See* Appellees' Br. at 23 ("It would be an absurd construction to conclude that the General Assembly, while intending to protect firearm manufacturers from litigation, left the door open in Subsection 3(1) to a claim that a manufacturer's legal conduct was negligent."). We must agree. *See Chavis v. Patton*, 683 N.E.2d 253, 258 (Ind. Ct. App. 1997) ("We must construe statutes to prevent absurdity or a result the legislature, as a reasonable body, could not have intended."); *see also Moore v. State*, 845 N.E.2d 225, 229 (Ind. Ct. App. 2006) ("[N]egligence in the State of Indiana is not a criminal act."), *trans. denied*.

[27] For its part, the City argues that "all of [its] claims involve unlawful conduct." Appellant's Br. at 30. Count II alleges that the defendants, including the Manufacturers, "failed to prevent or limit straw purchases; to prohibit or restrict sales to kitchen table and/or corrupt dealers;[19] to prevent multiple purchases of their handguns; [or] to prevent diversion of their handguns at gun shows[,]" among other things. Appellant's App. Vol. 2 at 84. These claims "substantially" overlap with the allegations of the City's public nuisance claim,

---

[19] According to the amended complaint, kitchen table dealers are

> federally licensed firearm dealers who do not sell firearms from a retail establishment. A 2000 AFT [sic] report indicates that 56% of a random sample of federally licensed firearms dealers are kitchen table dealers. Many of these firearms dealers, although federally licensed, have sold handguns without completing background checks on purchasers or complying with other reporting requirements, or have otherwise diverted guns into the illegal marketplace.

Appellant's App. Vol. 2 at 65.

*Gary 1*, 801 N.E.2d at 1241, and to the extent that they implicate unlawful conduct by the Manufacturers, they are not barred by the Immunity Statute.

[28]   Count II also incorporates the following allegations:

> 61.  For years, and continuing to date, defendants have *knowingly*, purposefully, *intentionally*, and/or negligently misled, *deceived* and confused Gary's citizens regarding the safety of handguns. *To increase sales and profits, defendants have falsely and deceptively claimed through advertising and promotion of their handguns that the ownership and possession of handguns in the home increases protection of one's home and person, and that the ownership of handguns enhances personal security. The defendants have also falsely represented that handguns without locks or built-in locking devices are safe.* For example, the defendants have promoted handguns with slogans such as "homeowner's insurance," "tip the odds in your favor," "your safest choice for personal protection" and have a "good night."
>
> 62.  Defendants have made these false and deceptive advertising and promotional claims even though they knew or should have known the fact, as proven by numerous studies, that handguns in the home actually increase the risk of harm to firearm owners and their families. Defendants also knew or should have known that handguns without locking devices on them are not reasonably safe. Indeed, as defendants are aware, studies have indicated that:
>
> A.  one out of three handguns is kept loaded and unlocked in the home;
>
> B.  guns kept in the home for self-protection are 22 times more likely to be used to kill or injure someone known by their owners, than to kill or injure an intruder;
>
> C.  a gun is used for protection in fewer than two percent of

home invasion crimes when someone is home; and

D. for every time a gun in the home was used in a self-defense or legally justifiable shooting, there were four unintentional shootings, seven criminal assaults or homicides, and eleven attempted or completed suicides with a gun.

….

64. These statistics have been proven real in Gary, where numerous deaths and injuries have occurred because handguns were purchased for home protection but were thereafter foreseeably used in unintentional shootings, teen suicides, domestic disputes and other acts of violence.

….

76. Defendants knew or reasonably should have known and foreseen that their negligent conduct would create an illegitimate secondary market in handguns that has cause [sic] and continue [sic] to cause tort damages by requesting [sic] it to expend substantially more resources than it otherwise would in the form of police services, emergency medical services, pension benefits, disability benefits, workers' compensation benefits, health care, expenses to provide additional security measures in public schools and other public facilities and loss of property values.

77. Defendants were and are also negligent in that they actively market their products in a manner that fails to alert possessors and users, as well as retailers, the substantial and latent risks of their handguns. Defendants negligently represents [sic] that the purchase of a firearm would enhance household security, that handguns are safe, and that families could safely store handguns unlocked and accessible to minors.

Appellant's App. Vol. 2 at 81-82, 85 (emphases added).

[29]   Indiana Code Section 35-43-5-3(a)(9) provides that a person who "disseminates to the public an advertisement that the person knows is false, misleading, or deceptive, with intent to promote the purchase or sale of property or the acceptance of employment … commits deception, a Class A misdemeanor."[20] The foregoing conduct alleged by the City could be found to violate this statute and therefore could be found to state a claim for unlawful marketing of firearms, which would not be barred by the Immunity Statute.[21]

[30]   In *Gary 1*, the court determined that the City may be entitled to both damages and injunctive relief for its negligent distribution and marketing claims. 801 N.E.2d at 1245-47. To the extent that the alleged damages may result from and the requested injunctive relief may relate to unlawful conduct, they are not barred by the Immunity Statute. Based on the foregoing, and based on our conclusion below that the PLCAA does not bar the City's claims, we reverse the trial court's entry of judgment on the pleadings as to Count II of the City's amended complaint and remand for further proceedings consistent with this opinion.

---

[20] Indiana Code Section 35-43-5-3(b) provides,

> In determining whether an advertisement is false, misleading, or deceptive under subsection (a)(9), there shall be considered, among other things, not only representations contained or suggested in the advertisement, by whatever means, including device or sound, but also the extent to which the advertisement fails to reveal material facts in the light of the representations.

[21] We need not, and therefore do not, consider whether the alleged conduct also could be found to violate federal law.

### *3.4 – Count III of the City's amended complaint does not allege unlawful conduct, so it is barred by the Immunity Statute.*

Count III of the City's amended complaint alleges that the Manufacturers

> were negligent in designing the handguns in a manner that the defendants foresaw or should have foreseen that the products would pose unreasonable risks of harm to the citizens of Gary who are unaware of the dangers of a firearm or untrained in the use of handguns, or who are minors or mentally impaired persons.

Appellant's App. Vol. 2 at 86. The complaint also alleges that the Manufacturers "design[ed] handguns which they knew or should have known did not have adequate safety devices," and negligently designed, manufactured, distributed, and/or sold handguns with "inadequate, incomplete, or nonexistent warnings regarding the risks of harm of the product[.]" *Id*. The complaint further alleges that the Manufacturers and other defendants "knowingly and intentionally acted in concert with each other, have tacitly agreed or cooperated, and/or colluded to wrongfully adhere to industry-wide standards or customs" regarding various handgun design features. *Id*. at 87. The complaint does not allege, however, that any of the foregoing conduct is unlawful. Therefore, we affirm the trial court's entry of judgment on the pleadings as to Count III.

## Section 4 – The Manufacturers are not entitled to attorney's fees and costs under Indiana Code Section 34-12-3-4.

Indiana Code Section 34-12-3-4 provides,

(a) If a court finds that a party has brought an action under a theory of recovery described in section 3(1) or 3(2) of this chapter, the finding constitutes conclusive evidence that the action is groundless. If a court makes a finding under this section, the court shall dismiss the claims or action and award to the defendant any reasonable attorney's fee and costs incurred in defending the claims or action.

(b) If:

(1) a party has brought an action under a theory of recovery described in section 3(1) or 3(2) of this chapter;

(2) the action commenced on or before August 27, 1999; and

(3) the action is dismissed;

no award for attorney's fees or costs incurred shall issue to the plaintiff or the defendant.

We have reversed the trial court's entry of judgment on the pleadings as to Counts I and II of the City's amended complaint, and therefore we affirm the court's denial of attorney's fees and costs to the Manufacturers.[22]

---

[22] Consequently, we need not determine whether the City's action "commenced on or before August 27, 1999" for purposes of the statute. We reiterate, however, that the City's original complaint was dated August 27 but was not file-stamped by the trial court clerk until August 30, 1999.

# Section 5 – Pursuant to the law of the case doctrine, we reaffirm our holding in *Gary* 2 that the PLCAA does not bar the City's claims.

[33] Finally, we address the City's argument that the trial court erred in ruling that its claims are barred by the PLCAA, which is contrary to this Court's prior holding in *Gary 2*. The City contends that the trial court was bound by the law of the case doctrine to follow that holding. We agree.

[34] "The 'law of the case' doctrine designates that an appellate court's determination of a legal issue is binding on both the trial court and the Court of Appeals in any subsequent appeal given the same case and substantially the same facts." *Cha v. Warnick*, 476 N.E.2d 109, 114 (Ind. 1985). "The purpose of the doctrine is to minimize unnecessary repeated litigation of legal issues once they have been resolved by an appellate court. This doctrine is based upon the sound policy that once an issue is litigated and decided, that should be the end of the matter." *Terex-Telelect, Inc. v. Wade*, 59 N.E.3d 298, 303 (Ind. Ct. App. 2016) (citation omitted), *trans. denied* (2017). "Accordingly, the law of the case doctrine bars relitigation of all issues decided directly or by implication in a prior decision." *Id*. (citation and quotation marks omitted). "A court has the power to revisit prior decisions *of its own or of a coordinate court* in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work manifest injustice." *State v. Lewis*, 543 N.E.2d 1116, 1118 (Ind. 1989) (emphasis added) (citation and quotation marks omitted).

"The trial court is not a coordinate court to this [C]ourt; thus, it has no power to alter an appellate decision." *Am. Family Mut. Ins. Co. v. Federated Mut. Ins. Co.*, 800 N.E.2d 1015, 1022 (Ind. Ct. App. 2004).

[35] Pursuant to the law of the case doctrine, the trial court was bound by our prior holding in *Gary 2* that the PLCAA does not bar the City's claims; absent any subsequent material change of facts, it was not free to revisit that decision. *Cf. Carson v. Palombo*, 18 N.E.3d 1036, 1041 (Ind. Ct. App. 2014) ("[W]here new facts are elicited upon remand that materially affect the questions at issue, the court upon remand may apply the law to the new facts as subsequently found."). In ruling that the PLCAA bars the City's claims, the trial court did not rely on new facts regarding this case, but rather on its assessment that

> subsequent case law has made it clear that [violations] of public nuisance statutes do not meet the definition of a State or Federal statute applicable to the sale or marketing of firearms, and are not the type of violations Congress intended to meet the predicate exception for the reason that such statutes do not regulate or implicate the sale or marketing of firearms.

Appealed Order at 5 (citing *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403 (2d Cir. 2008), *cert. denied* (2009), *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163 (D.C. 2008), *cert. denied* (2009), and *Ileto v. Glock, Inc.*, 421 F. Supp. 2d 1274, 1283-83 (C.D. Ca. 2006), *aff'd by* 565 F.3d 1126 (9th Cir. 2009), *cert. denied* (2010)).

[36] We first observe that we are not bound by another jurisdiction's or "a lower federal court's interpretation of federal law." *Seaboard Sur. Co. v. Ind. State Dist.*

*Council of Laborers & Hod Carriers Health & Welfare Fund*, 645 N.E.2d 1121, 1125 (Ind. Ct. App. 1995), *trans. denied*. We further observe that the Supreme Court of Connecticut recently remarked,

> [i]f Congress had intended to limit the scope of the predicate exception to violations of statutes that are *directly*, *expressly*, or *exclusively* applicable to firearms, however, it easily could have used such language, as it has on other occasions. The fact that the drafters opted instead to use only the term "applicable," which is susceptible to a broad reading, further supports the plaintiffs' interpretation [of the Connecticut Unfair Trade Practices Act (CUTPA), under which they sought relief against firearms manufacturers, distributors, and sellers for wrongful marketing of an assault rifle, as falling within the PLCAA's predicate exception].

*Soto v. Bushmaster Firearms Int'l, LLC*, Nos. SC 19832 and 19833, 2019 WL 1187339, at **30 (Conn. Mar. 19, 2019).[23]

[37]    Moreover, the trial court's ruling disregards the following language from *Gary 2*:

> Even assuming that the PLCAA requires an underlying violation of a statute facially applicable to the sale or marketing of a firearm, we cannot say that the City did not make such allegations. We note that the Indiana Supreme Court held that unlawful conduct was not a requirement of a public nuisance claim and that "generally, gun regulatory laws leave room for the defendants to be in compliance with those regulations while still acting unreasonably and creating a public nuisance." [*Gary 1*],

---

[23] The plaintiffs in *Soto* are the administrators of the estates of nine of the twenty-six victims who perished in the mass shooting at Sandy Hook Elementary School in Newtown, Connecticut.

.

801 N.E.2d at 1232-1233, 1235. However, the Indiana Supreme Court referred to "Indiana Code sections 35-47-2.5-1 through 15, dealing with the sale of handguns" and held that "[s]ome of the activity alleged in the complaint presumably violates those regulatory statutes, either directly in the case of the dealers or as knowing accomplices in the case of the other defendants." *Id.* at 1234-1235. The court also noted that the City alleged that the Manufacturers "are on notice of the concentration of *illegal* handgun sales in a small percentage of dealers, and the ability to control distribution through these dealers, but continue to facilitate *unlawful* sales by failing to curtail supply." *Id.* at 1235 (emphasis added). *Thus, even assuming that the PLCAA requires an underlying violation of a statute directly applicable to the sale or marketing of a firearm, the City alleged such violations in their complaint.*

875 N.E.2d at 432-33 (emphasis added).

[38] The Manufacturers acknowledge this passage but argue, as before, that the City was required to "allege a specific statutory violation" in its amended complaint. Appellees' Br. at 45. For the reasons given above, we disagree. Accordingly, we reverse the trial court's ruling that the PLCAA bars the City's claims and remand for further proceedings consistent with this opinion.[24]

[39] Affirmed in part, reversed in part, and remanded.

Najam, J., and Pyle, J., concur.

---

[24] Given our resolution of this issue, we need not address the City's argument that the PLCAA is unconstitutional. *See* Appellant's Br. at 40 ("If PLCAA bars the City's case, it is unconstitutional.").